IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMBASSADOR GLOBAL CHAUFFER, INC., a Georgia corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO.: _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| CHARTERUP, LLC, a Georgia company and ARMIR HARRIS, an individual, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Ambassador Global Chauffer, Inc. ("Ambassador"), submits its Complaint against Defendants CharterUP, LLC ("CharterUP") and Armir Harris ("Harris"), and alleges the following:

## NATURE OF ACTION

1.     This is an action for trademark and trade dress infringement, false designation of origin, and dilution under the Lanham Act, 15 U.S.C. §§ 1116, 1125(a), 1125(c); trademark infringement and dilution by tarnishment under Georgia law, O.C.G.A. §10-1-451(b); deceptive trade practices under the Georgia Uniform

Unfair and Deceptive Trade Practices Act, O.C.G.A. §10-1-372.[1], defamation, false advertising, unfair competition O.C.G.A. § 23-2-55, business disparagement, and tortious inference with business practices. Plaintiff is seeking an injunction against the illegal infringement activities of Defendants, in addition to monetary damages and treble damages where allowed.

## PARTIES

2.      Plaintiff Ambassador is a Georgia corporation with a principal place of business at 117 Barber Road Marietta, Georgia 30080.

3.      On information and belief, Defendant CharterUP, LLC is a Georgia limited liability company with a principal place of business at 3340 Peachtree Rd NE, Suite 100, Atlanta, Georgia 30326.

4.      On information and belief, Defendant Armir Harris is the CEO of CharterUP, LLC and is a resident of the state of Georgia.

## JURISDICTION AND VENUE

5.      As this action relates to trademark infringement, this Court has original subject matter jurisdiction over this action under 15 U.S.C. §1121(a) and under 28

---

[1] Plaintiff intends to amend to add a claim under Georgia's Fair Business Practices Act, O.C.G.A. §10-1-393, once the 30-day notice period has expired. *See* O.C.G.A. §10-1-399(b). Notice was sent via email and UPS overnight delivery on June 26, 2024.

U.S.C. §1338(a). Further, Plaintiff's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

6.     As this case relates to unfair competition and deceptive trade practices that are joined with and substantially related to the trademark infringement action, this Court also has original jurisdiction over these claims under 28 U.S.C. §1338(b).

7.     This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. 1367(a).

8.     This Court has personal jurisdiction over Defendants, as their principal place of business is within this State and they transact business within this State.

9.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because Defendants are residents within this district.

## FACTUAL BACKGROUND
## Ambassador Global Chauffer

10.     Ambassador was established by Ayman Abusamak ("Ayman") in the year 2016 and incorporated in the State of Georgia.

11.     With over eight (8) years of operation, Ambassador has built a reputation for delivering outstanding charter transportation service within the Atlanta region.

12.     Ambassador has been a key provider of transportation services in the Atlanta area, particularly catering to Hartsfield-Jackson Atlanta International Airport.

13.    Ambassador specializes in ground transportation, catering to individual business travelers as well as large groups.

14.    Ambassador's fleet includes a range of vehicles such as luxury sedans, stretch limousines, passenger vans, shuttle/minibuses, and motor coaches.

15.    Ambassador has been operating under its trade name "Ambassador Global Chauffeur" since at least 2012.

16.    Ambassador's logo showcases a star-shaped compass with a globe at its core, emphasizing the continents of the Americas. This design communicates a global presence and orientation, fitting for a chauffeur or transportation service. The company name is prominently presented in uppercase letters, with the words "ASSA" in smaller font size compared to the others.  The terms "GLOBAL" and "CHAUFFEUR" positioned beneath "AMBASSADOR" have been utilized since at least 2016.

17.    The above elements combine to create a trade dress that is inherently distinctive and consists entirely of arbitrary, non-functional design elements.

18.    The Ambassador trademarks have been in use for many years, have achieved widespread public recognition, and have developed secondary meaning.

19.    Ambassador has expended $5,000.00 per month since 2016 to promote and advertise its business under its trademarks.

20.     More specifically, Ambassador has advertised and used its trademarks in physical and online line advertisements, including paying to dress its fleet of over 18 vehicles in the Ambassador trade dress and operating the website https://www.atlanta-limos.com.

21.     In light of Ambassador's use of its trademarks in promoting its services, Ambassador's trademarks are immediately recognizable and associated in the minds of consumers solely in connection with Ambassador.

22.     Consumers in the charter transportation marketplace recognize Ambassador by the use of its trademarks.

## CharterUP

23.     Charter Up, LLC is a transportation logistics provider and operates a charter bus reservation platform and marketplace. Charter Up, LLC's services integrate the booking, tracking, and live transportation process for booking charter buses.

24.     On information and belief, CharterUP does not hold a USDOT number and is not authorized or licensed by the USDOT as a motor carrier to transport people or cargo.

25.     Therefore, CharterUP does not transport charter bus passengers itself, rather it contracts with charter bus companies nationwide to provide such services or provides referrals to such companies for a fee.

26.     According to its website, CharterUP is now partnered with more than 600 charter bus companies nationwide to provide their services through its platform.

27.     However, CharterUP is not a passive middleman for charter bus services, rather the company employs aggressive and predatory marketing practices to generate business.

28.     According to Inc. Magazine, from 2019 to 2022 CharterUP experienced an unimaginable 111,130% growth rate and was ranked the 2nd fastest growing company by Inc. Magazine in 2023.

29.     This rapid growth has come at the expense of its providers, whom CharterUP has systematically and unlawfully exploited for its own gain.

30.     CharterUP systematically misappropriates the trade name and intellectual property of its service providers to market CharterUP's own services.

31.     For many (at least 190 known at the time of the filing of this complaint) of CharterUP's service providers CharterUP created its own website and localized phone number utilizing the service provider's trade name, but actually advertising CharterUP's services.

32.     CharterUP has knowingly passed itself off as the service provider in each instance, attempting to profit off the service provider's trade name and other intellectual property.

33.    In many instances CharterUP has taken business from customers attempting to contact a service provider through CharterUP's imposter website, and CharterUP has given the business to a different service provider while taking a fee.

34.    Consumers were systematically deceived by this deceptive marketing practice.

35.    CharterUP's efforts have been largely successful, as the company boasts an annual revenue run rate of $150 million in 2022 and growing.

36.    In some instances, CharterUP purports to have a contract with the service provider which grants them license to the intellectual property rights of the service provider, in other instances, as with Ambassador, no such contract exists.

37.    In or around January, 2020 or earlier, CharterUp began to pass itself off as Ambassador by operating the website ambassadorbuscharteratlanta.com.

38.    In or around January 2020, or earlier, CharterUp began to pass itself off as Ambassador by operating the phone number 404-620-4690, listed on CharterUp's infringing website.

39.    There is no agreement between Ambassador and CharterUP licensing Ambassador's intellectual property or authorizing CharterUP to use Ambassador's intellectual property in any way.

40.    There is no agreement between Ambassador and CharterUP authorizing the creation, implementation, and upkeep of a website or microsite mirroring

Ambassador's website in terms of content, logos, design, images, contact details, functionality, and similar elements.

41.    CharterUP operates in an abusive and predatory manner, enriching itself while undermining, and imperiling Ambassador's business.

42.    On or about February 2024, Ambassador came to know that CharterUP and Harris have engaged in fraudulent conduct by falsely representing CharterUP as Plaintiff's business entity, Ambassador Global Chauffeur, on CharterUP's website ambassadorbuscharterssatlanta.com and in Google listings which utilizing Plaintiff's name and logo without authorization.

43.    CharterUP unlawfully used Ambassador's name and logo on their website and Google listing in an attempt to lure away Ambassador's customers.

44.    CharterUP, at the bottom of its site ambassadorbuscharterssatlanta.com falsely claims that "Ambassador Global Chauffeur [is] doing business as Ambassador Charter Bus by DOT number 2876377."



45.    This statement by CharterUP is completely false. Ambassador does not do business as Ambassador Charter Bus and has not authorized CharterUP to use its

DOT number, name, or logo in any capacity. Ambassador has no association with CharterUP.

46.    CharterUP and Harris have unlawfully appropriated Ambassador's clientele by soliciting potential customers through its unauthorized website and phone number, thereby engaging in unfair competition and deceptive trade practices.

47.    CharterUP is deceitfully impersonating Ambassador by through website ambassadorbuschartersatlanta.com. This website is a cheap copy of Ambassador's website (atlanta-limos.com), using the same stylized "Ambassador" and unique compass logo.

          

*Ambassador's Original Logo*              *CharterUP      Imposter Logo*

48.    CharterUP's imposter website even uses the same nighttime picture of downtown Atlanta.



*Ambassador's Website with Nighttime Atlanta Photo*



*CharterUP Holdings' Imposter Website with the Identical Nighttime Atlanta Photo*

*See also* Screenshots of the archived website

https://web.archive.org/web/20211210021652/https://www.ambassadorbuscharters

atlanta.com/ attached as group **Exhibit A**.

49.    The imposter website advertises a purposefully confusing service, "Ambassador Charter Bus." By design, the imposter website links "ambassador" with "charter bus" into one website.

50.    Ambassador provides a variety of vehicles, including charter buses. Therefore—and as intended by CharterUP—consumers looking for "Ambassador charter buses" will first find a link to the imposter website, not Ambassador's true website.



51.    On information and belief, none of the vehicles featured on ambassadorbuschartersatlanta.com, belong to Ambassador, they are merely stock photos or derived from another source.

52.    The contact information, a single phone number 404-620-4690, listed on ambassadorbuschartersatlanta.com does not belong to Ambassador but instead, on information and belief, directs consumers to a reservation line affiliated with CharterUP.

53.    Calls made to the number 404-620-4690 are answered as "Ambassador Atlanta".

54.    This number and advertising for "Ambassador Bus Charters" can be found on other third-party websites, advertising as Ambassador when in fact the number belongs to CharterUP. **Exhibit B.**

55.    Ambassador does not own, operate, use or control the phone number 404-620-4690.

56.    Prospective customers, employees, and other members of the public have attempted to contact Ambassador at ambassadorbuschartersatlanta.com and the phone number 404-620-4690.

57.    Recently, a customer called Ambassador to ask about her charter bus reservation, asking when the charter bus would arrive. Ambassador searched for the customer's name but could not find her name in its system. As Ambassador was

searching, the customer's charter bus arrived so the customer ended the phone call. Upon information and belief, this customer attempted to reserve Ambassador's services but was misled and reserved "Ambassador Bus Charter's" services instead.

58.     At least one prospective employee attempted to contact Ambassador at CharterUP's number for "Ambassador Bus Charter", 404-620-4690, on or about February 2, 2024.

59.     Prospective customers, employees, and other members of the public have been deceived by CharterUp's website and phone number which are passed off as Ambassador's.

60.     The website www.ambassadorbuschartersatlanta.com made absolutely no reference to CharterUP at all. There is not a single reference to or link to CharterUP's platform, leading users to believe they are using Ambassador's website.

61.     Just as www.ambassadorbuschartersatlanta.com did not link or reference CharterUP's main website, www.charterup.com, there were no links from CharterUP's     main     website     to     its     unauthorized     website www.ambassadorbuschartersatlanta.com.

62.     Federal Motor Carrier Safety Administration ("FMCSA") regulations require motor carriers to register a DOT number and forbids motor carriers from authorizing others to use their DOT numbers.

63.   Not only did Ambassador not authorize CharterUP to use its DOT number, Ambassador could not have authorized CharterUP to use its DOT number since doing so would be a violation of FMCSA rules.

64.   By using Ambassador's DOT number without authorization, or at all, CharterUP has put Ambassador at risk of losing its DOT registration.

65.   Ambassador did not, nor has it ever, done business as "Ambassador Bus Charters," nor did it authorize CharterUP to create or operate such an entity.

66.   Through impersonating Ambassador, CharterUP diverted traffic away from Ambassador's website to its own infringing platform. This resulted in customers, who thought they were engaging with Ambassador, receiving service from other CharterUP providers, chosen solely by CharterUP.

67.   After March 29, 2024 CharterUP shut down the website www.ambassadorbuschartersatlanta.com.

68.   On information and belief, CharterUP also caused the Google listing for Ambassador Bus Charters to indicate that Ambassador is permanently closed.

69.   Ambassador is not closed, permanently or otherwise, and a true and correct copy of a screenshot showing the false "permanently closed" statement on Google is attached hereto as **Exhibit C**.

70.   The statement that Ambassador was "permanently closed" on the imposter website is completely false and deceptive to the public.

71.    Defendant published and communicated these false statements to third parties in Georgia and elsewhere by making the statement publicly available and accessible on the Internet.

72.    The false statement that Ambassador is permanently closed harms Plaintiff in Plaintiff's trade or business and is calculated to cause financial injury and damage to Plaintiff's reputation and business.

73.    CharterUP acted negligently and with actual malice in publishing the false and defamatory statements on Google, knowing they were false or with reckless disregard for their truth.

74.    On information and belief, CharterUP has also created intentionally deceptive websites for at least 190 business establishments in the vehicle charter industry. Some of these business names are:

1.  4 Season Bus Service
2.  A Family Limo and Charter Buses of Miami
3.  A Star City Coach Bus Dallas
4.  A to Z Bus and Coach
5.  Abba Bus Company
6.  Ace Bus Charter
7.  Ace Coach
8.  Advantage Tours
9.  ADO El Paso Charter Bus
10. All American Tours
11. American Coaches and Buses Atlanta
12. American Dream Tours Bus
13. American Vacation Tours
14. Arrange a Charter Bus

15. AS Coach and Charter Bus
16. Ash Coach Bus
17. Atlanta Charter Bus Company
18. Atlanta Premier Coach
19. AtoZ Bus and Coach
20. Avila Houston Charter Bus
21. Barracuda Coach Service
22. Bestcan Vehicle Rentals
23. Bestway Coach and Bus
24. Best Travel Bus
25. Blessed Transportation
26. Blue Sky Transportation
27. Buckeye Bus
28. Bus Rentals ABC
29. Busliner Tour
30. Cal Coast Charter Bus
31. California Excursions
32. Camelot Coaches of Alabama
33. Canyon Bus
34. Care Bus Rentals
35. Carrera Motorcoach
36. Cathay Charter Bus Rental
37. Charter Bus California
38. Charter A La Carte
39. Chicago Celebrity Coach Service
40. Chicago Charter Bus
41. Chicago Regal Charter Bus
42. Citadel Charter Bus Rentals
43. City Coach Tour
44. Coach RS Los Angeles
45. Coastal Crew Coach
46. Coast2Coast Charter Bus
47. Colorado Royalty Charters
48. Common Bus Massachusetts
49. Corporate Bus Service LA
50. Crew Coach

51. Dallas Skyway Coach Bus
52. Damaris Transportation
53. DJ Bus Service
54. DLT Bus Rentals
55. DTS Charter Bus DC
56. Easton Bus Rentals
57. Eco Bus Company
58. ECS Charter Bus Dallas
59. Elder Coach North Carolina
60. Elite Texas Bus Rentals
61. ELW Atlanta Charter Bus
62. ETI Coach Bus
63. Exotic Bus Charters NYC
64. Experience Bus Company
65. Express Charter Bus NYC
66. Five Star Transportation
67. Forbridge Bus Service
68. Four Season Bus Service
69. Fortune New York Charter Bus
70. Galveston Bus Charters
71. Garcia Tours
72. Georgia Charter Bus Rentals
73. Go 2 Buses
74. Go 2 Buses Austin
75. Go 2 Buses Los Angeles
76. Go 365 Tours and Coach
77. Go West Bus and Coach
78. Godfather Coach
79. Guardian Bus and Coach
80. Gunther Motorcoach
81. H and L Motorcoach
82. Happy Coach of Florida
83. Highline Bus Service
84. Holt Coach Bus Atlanta
85. Houston AAmbassador Bus Charters
86. Imperial Motorcoach Rentals

87. Intermex Bus Rentals
88. Inview Luxury Travel Group
89. J&F Bus Service
90. J&J Motorcoach
91. JBT Bus Company
92. Jet Motorcoach
93. Kay Lee Coach
94. Key Tours of Augusta
95. King Coach Travel
96. Kingz Tour
97. Lakeland Bus Travels
98. Lansdowne Charter Bus Arlington
99. Legacy Bus Rental
100. Los Chavez Coach Bus
101. Luxury Bus Arizona
102. M&M Bus Tours
103. M Bus Company
104. Maze Bus
105. Merlin Charter
106. Messenger Bus Rentals
107. Metro Charter Bus
108. Metro Travel Service
109. MGM Tour
110. Miami Exotic Bus Charters
111. Miami Tours Transport
112. MIB Tour
113. Millennium Motor Coach
114. Minnesota Bus Company
115. MTI Charter Buses
116. MV Bus Service
117. NC Easy Travel
118. Neumann Bus Travel
119. Nevada Stardust Tours
120. New Age Tours
121. New Sun Coach
122. New York Luxury Bus Charters

123.  New York XYL Tours and Bus
124.  Olympus Bus Florida
125.  Orlando CLK Coaches
126.  Orlando Premier Charter Bus
127.  Overland Bus Company
128.  P Walker Motorcoach
129.  Patten Charter Buses
130.  Pegasus Charter Bus Company
131.  Phoenix Bus Coaches
132.  Post Transportation
133.  Presidential Coach Denver
134.  Prime Texas Bus
135.  Prosperity Coach
136.  Quality Assurance Charter Bus California
137.  R&W Coach and Bus Company
138.  Rainer Bus Transportation
139.  Reliable Bus Rentals
140.  Rez Express Bus Service
141.  Roller Bus
142.  Rose Coach
143.  Royal Bus OKC
144.  Royal Bus Service
145.  San Antonio OK Tours and Coach
146.  San Francisco Golden Bay Charters
147.  Sandy Springs Charter Bus & Minibus Rental
148.  Semper Fi Coach
149.  Seven Stars Motorcoach
150.  Signature Coach Service
151.  Silhouette Bus and Tours
152.  Spring Coach
153.  ST Coach Buses
154.  Stallings Bus Service
155.  Star City Coach Bus
156.  Starlight Bus Rentals
157.  Statement Bus
158.  Sun Bus Company

159. Sun Coach Northeast
160. Sunny Trail Coach Service
161. SureRide Transportation
162. Sweet Bus Las Vegas
163. TBC Coach Bus Rentals
164. Texas Eagle Coach Bus
165. Thrasher Charter Bus
166. Tornado Bus Transportation
167. Tour California
168. Trans Bus Company
169. TranSouth Atlanta Bus Charters
170. Transporter Cargo and logistics
171. Transtyle Bus
172. Trophy Bus Transportation
173. Umbrella Bay Charters
174. Unity Motorcoach
175. Unlimited Tours Coach DC
176. USA Motorcoach of Florida
177. USA Caribbean Travel
178. Village Charter Buses
179. VIP Motorcoach Rental
180. VLP Motorcoach Rental
181. VIP Tours and Charter Bus
182. VN Charter Bus Fort Worth
183. VR Bus Tours
184. Washington Valley Transport
185. West America Motorcoach
186. West Tennessee Tour Bus
187. Williams Charter Bus Atlanta
188. Wright Bus Travel
189. Youngs Motorcoach Rental
190. Your Way Charter Bus
191. Z Charter Bus Bethesda

*See also*, **Exhibit D -** Google search results of imposter websites created by CharterUP.

## COUNT I: TRADEMARK INFRINGEMENT – 15 U.S.C. §1125(a)
### (Against all Defendants)

75.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 74 as though fully restated herein.

76.    The commercial use of Ambassador's trademark for promoting Defendants' services is willful infringement of Ambassador's common law trademark rights, and such commercial use was with knowledge of and intended to trade off of Ambassador's prior rights in its trademarks.

77.    Defendants' use of Ambassador's trademarks creates a likelihood of confusion as to the affiliation, connection, association, sponsorship, or endorsement by Plaintiff in an appreciable number of consumers and potential consumers of charter bus services.

78.    Ambassador has alleged incidents of actual confusion between Defendants' website and phone number and Ambassador's.

79.    The goodwill associated with Ambassador's trademarks is of enormous value, and unless Defendants are restrained from continuing their unlawful conduct now, Ambassador will suffer irreparable injury.

## COUNT II: UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, PASSING OFF – 15 U.S.C. §1125(a)
**(Against all Defendants)**

80.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 79 as though fully restated herein.

81.     Defendants' use of Ambassador's trademarks to market its charter bus services will likely cause confusion, mistake, or deception on the part of persons seeking Ambassador's charter bus services as to the origin, sponsorship, or approval by Ambassador of Defendants' charter bus services, in violation of 15 U.S.C. §1125(a).

82.     Defendants' unfair competition, false designation of origin, and passing off has been willful and deliberate, designed specifically to trade upon the consumer goodwill enjoyed by Ambassador.

83.     The goodwill associated with Ambassador's trademarks is of enormous value and unless Defendants are restrained from continuing their unlawful conduct now, Ambassador will suffer irreparable injury.

## COUNT III: TRADEMARK DILUTION – 15 U.S.C. §1125(c)
**(Against all Defendants)**

84.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 83 as though fully restated herein.

85.     Defendants are making commercial use in commerce of marks that dilute and are likely to dilute the distinctiveness and effectiveness of Ambassador's

trademarks by eroding the public's exclusive identification of these famous marks with Ambassador's, tarnishing and degrading the positive associations and prestigious connotations of Ambassador's trademarks and otherwise lessening the capacity of the Ambassador's trademarks to identify and distinguish services.

86. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Ambassador's trademarks or to cause dilution of Ambassador's trademarks, to the great and irreparable injury of Ambassador.

## COUNT IV: DILUTION BY TARNISHMENT – O.C.G.A. §10-1-451(b)
### (Against all Defendants)

87.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 84 as though fully restated herein.

88.    Through long and continuous use of its trademarks, Ambassador has built up enormous reputation and good will.

89.    Defendants' subsequent use of Ambassador's trademarks to divert customers from and spread false information about Ambassador threatens a likelihood of injury to Ambassador's business reputation and dilution of the distinctive qualities of its marks.

90.    Defendants' false website has diverted customers away from Ambassador and funneled them to CharterUP, which has made no effort to protect

Ambassador's marks and has only spread harmful false information about the company.

**<u>COUNT V: VIOLATION OF THE UNFAIR AND</u>**
**<u>DECEPTIVE BUSINESS PRACTICES ACT – O.C.G.A. §10-1-372(a)</u>**

91.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 90 as though fully restated herein.

92.    Defendants have passed their services off as those of another by using Ambassador's branding and DOT number to solicit jobs that were fulfilled by other companies in violation of O.C.G.A. §10-1-372(a)(1).

93.    By developing and maintaining the imposter website www.ambassadorbuscharteratlanta.com, which purports to be run by Ambassador, Defendants have caused a likelihood of confusion or of misunderstanding as to the sources, sponsorship, approval, or certification of services in violation of O.C.G.A. §10-1-372(a)(2).

94.    Defendants have disparaged the services and business of Ambassador by false or misleading representations by creating, without authorization, a false and misleading d/b/a; fraudulently and without authorization using Ambassador's DOT number; and by spreading false information about Ambassador, including telling consumers that it is out of business, in violation of O.C.G.A. §10-1-372(a)(8).

95.    These violations were willful and taken with intent to capitalize on the reputation and goodwill enjoyed by Ambassador.

## COUNT VI: DEFAMATION O.C.G.A. § 51-5-1(a)
### (Against all Defendants)

96.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 95 as though fully restated herein.

97.   Defendants published false and malicious false statements in writing by creating an imposter website, and by claiming that Ambassador is "permanently closed" on a Google listing.

98.   The false statement that Plaintiff's business is "permanently closed" constitutes libel per se under O.C.G.A. § 51-5-1(a) because it falsely attacks and defames Plaintiff's trade, business and professional reputation.

99.   The false statement has a natural tendency to injure Plaintiff's business reputation and expose Plaintiff's business to public hatred, contempt and ridicule.

100.   Defendants negligently published and communicated the libelous statement to third parties and the public at large by making it available and accessible on the Internet, satisfying the publication requirement under O.C.G.A. § 51-5-1(b).

101.   The false and defamatory statements published by Defendants were calculated to cause financial injury and damage to Plaintiff's business reputation, goodwill and interests in Georgia.

102.   Defendants acted negligently and with actual malice in publishing the false and libelous statements on the imposter website, knowing they were false or with reckless disregard for their truth.

103.   As a direct and proximate result of Defendants' libelous statements, Plaintiff has suffered special damages including lost profits, loss of business reputation and goodwill, and expenses incurring in mitigating the defamation.

104.   Defendants' actions constitute defamation libel per under Georgia law, for which Plaintiff is entitled to recover actual and special damages.

## COUNT VII: FALSE ADVERTISING
### (Against all Defendants)

105.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 104, as though fully restated herein.

106.   Defendants created an imposter website at www.ambassadorbuschartersatlanta.com that falsely advertised and represented itself as being the official website of Plaintiff's business, Ambassador.

107.   Defendants also created a Google listing that contained false and misleading statements that Ambassador is "permanently closed."

108.   The imposter website and Google listing also displayed vehicles and contact information that does not belong to Plaintiff's business.

109.   Through the imposter website, Defendants impersonated and passed off as Plaintiff's business Ambassador, diverting internet traffic and potential customers away from Plaintiff's real website and business.

110.   Defendants' imposter website falsely advertised that it was providing Plaintiff's services, when in reality customers were receiving services from Defendants' own providers chosen by Defendants.

111.   Defendants' imposter website deceived and had a tendency to deceive a substantial segment of the internet public and Plaintiff's potential customers.

112.   Defendants' deceptive and false advertising on the imposter website influenced customer decisions regarding whether to use Plaintiff's services.

113.   Defendants' false advertising on the imposter website and on Google materially misrepresented the nature, characteristics, and qualities of Plaintiff's services.

114.   Defendants knew the advertisements on the imposter website and Google were false and misleading, or acted with reckless disregard as to their truth or falsity.

115.   Defendants conduct in creating the imposter website and advertising Ambassador's business as closed and not actually selling the represented services violates O.C.G.A. § 10-1-420(a), which prohibits advertising merchandise or services with the intent not to sell as advertised.

116.   As a direct result of Defendants false advertising, Plaintiff has suffered actual damages including diverted business, lost profits, and damage to its business reputation and goodwill.

117.   Defendants' conduct constitutes false advertising in violation of O.C.G.A. § 10-1-420 et seq., Georgia's Fair Business Practices Act.

## COUNT VIII: FRAUD AND UNFAIR COMPETITION O.C.G.A. § 23-2-55
### (Against all Defendants)

118.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 117, as though fully restated herein.

119.   Defendants created an imposter website at www.ambassadorbuscharsatlanta.com that falsely designated and represented itself as being the official website of Ambassador.

120.   The imposter website falsely used Plaintiff's name and trade identity in connection with Defendants services, causing a likelihood of confusion as to the source or origin of the services.

121.   Defendants' imposter website used images, descriptions and information in a manner that falsely suggested an association, connection or affiliation with Plaintiff's business when no such relationship existed.

122.   Defendants made false representations on the imposter website that its services were those of Plaintiff's legitimate business, and Defendants knew they were not.

123.   Defendants' unauthorized use of Plaintiff's business on the imposter website falsely designated the source and origin of the services as being from Plaintiff.

124.   Defendants knew that they were encroaching upon Plaintiff's trade name and continued to do so with the intention to mislead the public.

125.   Defendants' knowingly false designations on the imposter website violate O.C.G.A. § 23-2-55, Georgia's statute prohibiting fraudulent use of trade names.

126.   As a direct result of Defendant's false designations, Plaintiff has suffered actual damages including diverted business, lost profits, and irreparable harm to its business reputation and goodwill.

## COUNT IX: BUSINESS DISPARAGEMENT
### (Against all Defendants)

127.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 126, as though fully restated herein.

128.   Defendants published false and defamatory statements representing that Plaintiff's business was "permanently closed" on Google.

129.   The false statements that Plaintiff's business was permanently closed were made maliciously and with the intent to discourage potential customers from using Plaintiff's services.

130.   Defendants knew the statements that Plaintiff's business was permanently closed were false or acted with reckless disregard as to their truth.

131.   Defendants' false statements published online were calculated to cause special damages in the form of diverting customers away from Plaintiff's legitimate business.

132.   As a direct result of Defendants false and disparaging statements, Plaintiff suffered special damages including lost profits and harm to its business reputation.

133.   Defendants disparaging statements also constitute business disparagement in violation of O.C.G.A. § 10-1-393(a).

## COUNT X: TORTIOUS INTERFERENCE WITH BUSINESS PRACTICES
### (Against all Defendants)

134.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 133, as though fully restated herein.

135. Defendants acted wrongfully and improperly without privilege by:

   a.  Spreading false information about Ambassador, including utilizing a false d/b/a and making false statements that Ambassador is permanently closed;

   b.  Using predatory practices to divert customers away from Ambassador for CharterUP's own enrichment; and

   c.  Fraudulently using Ambassador's DOT number, putting Ambassador at risk of losing its DOT registration.

136.   Defendants took these actions purposefully, with malice and intent to profit off the goodwill and reputation cultivated by Ambassador.

137.   Through their predatory and abusive practices, Defendants caused one or more parties to discontinue or fail to enter into anticipated business relationships with Ambassador.

138.   Ambassador has alleged multiple instances of consumers or prospective employees seeking out its services and being confused or misled by Defendants' imposter website and fraudulent statements.

139.   Defendants' conduct has caused Ambassador damages in the form of lost revenue and damage to its reputation and good will.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Court:

a.    Grant an injunction pursuant to 15 U.S.C. §§ 1116, 1125(c), O.C.G.A. §10-1-451(b), O.C.G.A. §10-1-373, and O.C.G.A. § 23-2-55, preliminarily and permanently restraining and enjoining Defendants, their officers, agents, and employees, and attorneys, and all those persons or entities in active concert or participation with it from:

    1.    Advertising, promoting, supplying, distributing, offering for sale, or selling any goods or services that bear Ambassador's trademarks, trade dress or any other mark or design element substantially similar or confusing thereto;

2.      Engaging in any other activity constituting unfair competition with Ambassador, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the development, maintenance, or operation of any website featuring or otherwise containing Ambassador trademarks or any design element substantially similar or confusing thereto;

3.      Engaging in any other activity that will cause the distinctiveness of Ambassador's trademarks to be diluted and/or tarnished.

b.      Require Defendants to file with this Court and serve on Ambassador within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

c.      Direct such other relief as this Court may deem appropriate to prevent consumers, the public, and/or trade from deriving any erroneous impression that any services at issue in this action have been marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants or any websites operated by Defendants have been authorized by Ambassador or are related with Ambassador and/or their services;

d.      Award Ambassador statutory damages or in the alternative its actual damages suffered as a result of Defendants' actions;

e.  Award Ambassador actual damages to which it is entitled under applicable federal and state laws;

f.  Award treble damages;

g.  Award Ambassador its costs and attorney's fees; and

h.  Grant Ambassador such additional and further relief as this Court deems just and proper.

Respectfully submitted this 26th day of June 2024.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*/s/ L. Clint Crosby*
L. Clint Crosby
Georgia Bar No. 197877
Tyler P. Bishop
Georgia Bar No. 566705
3414 Peachtree Road, NE, Ste 1500
Atlanta, GA 30326
Telephone: (678) 406-8702
Facsimile: (678) 406-8810
ccrosby@bakerdonelson.com
tbishop@bakerdonelson.com

Sean M Sharp (pro hac vice forthcoming)
**ATOM LAW GROUP**
770 N. LaSalle, Suite 700
Chicago, IL 60654
Telephone: (312) 943-8000
ssharp@atom.law

*Counsel for Ambassador*
*Global Chauffer, Inc.*